UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jamarr Marcelles Elliot[1]                              Court File No. 15-cv-2812 (ADM/LIB)

                Petitioner,

      v.                                            **REPORT AND RECOMMENDATION**

State of Minnesota,

                Respondent.

      This matter comes before the undersigned United States Magistrate Judge upon Petitioner Jamarr Marcelles Elliot's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("the Petition"). [Docket No. 1]. The Honorable Ann D. Montgomery referred the present Petition to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

      For the reasons discussed herein, the Court recommends **DENYING** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], with prejudice.

## I.      BACKGROUND AND STATEMENT OF FACTS

      On June 25, 2015, Petitioner, a Minnesota state correctional facility inmate at that time, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody with this Court, challenging the constitutionality of Minnesota Statute § 169A.20, Subdivision 2, Minnesota's Criminal Test Refusal Statute, and thereby, the constitutionality of his state court conviction. (Petition [Docket No. 1]).

---

[1] There appears to be some confusion in the record regarding the correct spelling of Petitioner's last name. Throughout the Minnesota state court holdings and in Petitioner's brief to the Minnesota Court of Appeals his name is spelled "Elliott," while in his present, handwritten Petition it is spelled "Elliot." As Petitioner spells his name "Elliot" in the present petition, the Court will proceed with that spelling of his name for the present petition.

The Minnesota Court of Appeals related the following details about the events surrounding Petitioner's arrest:

In the early morning of October 16, 2011, a citizen with the initials M.R. saw a black Chevrolet Suburban in Coon Rapids turn at a stoplight, go over a median, hit a sign that was in the median, and continue driving. M.R. called 911 and followed the truck until it parked in a residential neighborhood. M.R. reported to the 911 dispatcher that he saw the truck go over the median and hit a sign. M.R. gave the dispatcher the truck's description, location, and license plate number and said that the driver "stumbled a little bit" when he got out of the truck.

Officer Adam Jacobson responded to M.R.'s 911 call and saw a sign lying partially in the roadway at the intersection identified by M.R. Jacobson then went to the location identified by M.R. to find the parked truck. He found the truck and pulled his car alongside it. Jacobson shined a spotlight into the truck and saw appellant Jamarr Elliott sitting inside.

Jacobson approached the truck and saw that the driver's side window was open. Jacobson immediately "detect[ed] a strong odor of an alcoholic beverage coming from the passenger's compartment of the vehicle" and "observed [Elliott] to have bloodshot and watery eyes and glassy eyes." Jacobson told Elliott that he was talking to him because there was a report that Elliott drove onto a median and hit a sign. Elliott "denied striking any sign or driving the vehicle" and told Jacobson that he was just dropped off. Elliott also denied drinking alcohol that night.

Jacobson saw a set of keys behind the front passenger's seat of the truck that was located within an arm's length of Elliott. When Jacobson spoke to Elliott, Elliott's speech "was slurred at times" and Jacobson smelled the odor of alcoholic beverages on Elliott's breath. Jacobson also inspected the outside of Elliott's car and saw "fresh damage on the front passenger's side of the vehicle that was consistent with what [he has] seen in the past as damage from a sign."

Jacobson asked Elliott to step out of his truck so that Jacobson could perform field sobriety tests on Elliott. Elliott refused to perform the field sobriety tests. Jacobson attempted to give Elliott a preliminary breath test (PBT), and Elliott refused to take the PBT as well. Elliott said he would not take the PBT because "the keys were not in the ignition of the vehicle." Jacobson then asked Elliott if he was going to cooperate with testing, and Elliott responded, "Let's do this." When Jacobson gave Elliot instructions for the tests, Elliott again refused to participate.

Based on his observations, training, and experience, Jacobson believed that Elliott committed the offense of driving under the influence, and he placed Elliott under arrest. Jacobson took Elliott to the Coon Rapids Police Department. Once they were at the police station, Jacobson read Elliott the implied-consent advisory. Elliott orally responded that he

was "refusing everything," and he also refused breath, blood, and urine testing based on his conduct.

State v. Elliott, No. A13-0466, 2014 WL 2013334, at *1 (Minn. Ct. App. May 19, 2014), review granted (July 15, 2014), review denied (Apr. 14, 2015).

### A.  Relevant Underlying State Court Proceedings

On October 3, 2012, in Anoka County, Minnesota District Court, a jury convicted Elliot of felony test refusal in violation of Minn. Stat. § 169A.20, subd. 2, .24, subd. 1(2). Subsequently, the Anoka County District Court sentenced him to the custody of the Commissioner of Correction for a prison term of sixty (60) months. See Elliott, 2014 WL 2013334, at *2.

After Elliot's conviction, but before his appeal had been adjudicated by the Minnesota Court of Appeals, the United States Supreme Court found in Missouri v. McNeely that "the natural metabolization of alcohol in the bloodstream" does not present "a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." — U.S. —, —, 133 S.Ct. 1552, 1556, 185 L.Ed.2d 696 (2013). Elliot thereafter raised a constitutionality challenge to Minnesota's test-refusal statute under McNeely. Petitioner appealed his conviction to the Minnesota Court of Appeals and presented the following issue on to the Court:

> 1. Is Minn. Stat. § 169A.20, Subd. 2, Minnesota's criminal test refusal statute, unconstitutional in light of the United States Supreme Court decision in Missouri v. McNeely such that Mr. Elliott's conviction for the first degree test refusal pursuant to the Minn. Stat. § 169A.20, Subd. 2 must be reversed?

(Respondent's Answer to Pet. for Writ of Habeas Corpus, [Docket No. 6-2], Ex. 1, at 3).

Although the constitutionality of the statute was raised for the first time on appeal, the Minnesota Court of Appeals, nevertheless, fully addressed the merits of Elliot's challenge. Elliott, 2014 WL 2013334, at *2. The Minnesota Court of Appeals relied heavily on State v.

Bernard, 844 N.W.2d 41 (Minn. Ct. App. 2014),[2] noting that "[b]ecause Bernard is directly applicable and we follow the published opinions of this court, we apply Bernard to this case." Elliott, 2014 WL 201334, at *4.

The Minnesota Court of Appeals concluded, using its own Bernard decision as a guide, that Elliot's McNeely claim was without merit, reasoning that "penalizing [a] driver's decision to forego taking a chemical test is not unconstitutional when the circumstances establish a basis for the officer to have alternatively pursued a constitutionally reasonable nonconsensual test." Id. at *3 (internal citation and quotation omitted). The Minnesota Court of Appeals found that because the Officer had a "constitutionally viable alternative" to obtain a warrant when he asked Elliot to voluntarily take a breath test, penalizing his refusal did not violate his constitutional rights. Id. at *4 (citing Bernard, 844 N.W.2d at 42–45). Therefore, the Court concluded, Petitioner's "prosecution under the test-refusal statute did not violate" his constitutional rights. Id.[3]

Accordingly, the Minnesota Court of Appeals affirmed Elliot's conviction. Elliot petitioned the Minnesota Supreme Court for review and the petition was granted on July 15, 2014. (Minn. S.C. July, 15, 2014, Order, [Docket No. 6-3], Ex. 6]). The Minnesota Supreme Court granted the petition and stayed further proceedings, specifically, "pending final disposition in State v. Bernard, No. A13-1245." (Id.). However, on April 14, 2015, the Minnesota Supreme

---

[2] The Minnesota Supreme Court later affirmed Bernard concluding that "the breath test the police asked Bernard to take would have been constitutional as a search incident to a valid arrest, and as a result, charging Bernard with criminal test refusal does not implicate a fundamental right, and that the test refusal statute is a reasonable means to a permissive object[.]" State v. Bernard, 859 N.W.2d 762, 764 (Minn. 2015), cert. granted 136 S.Ct. 615 (2015), and aff'd sub nom. Birchfield v. N. Dakota, No. 14-1468, 2016 WL 3434398.

[3] The Minnesota Court of Appeals did not decide Petitioner's claim of whether the criminal test-refusal statute placed an unconstitutional condition on his license, reasoning that the doctrine of unconstitutional conditions is only properly raised when a party has successfully pleaded the merits of the underlying unconstitutional government infringement. Id. at *4. The Court asserted that the "test-refusal statute does not authorize an unconstitutional government infringement because, under its terms, the police may not search without a driver's express, valid consent" and the Minnesota Supreme Court and the United States Supreme Court, according to the Minnesota Court of Appeals, have "concluded that such penalties are not unduly coercive as a matter of law." Id. at *4 (citing McNeely, 133 S.Ct. at 1566, South Dakota v. Neville, 459 U.S. 553, 559–69 (1983); State v. Brooks, 838 N.W.2d 563, 570 (Minn. 2013); McDonnel v. Comm'r of Pub. Safety, 473 N.W.2d 848, 855–56 (Minn. 1991)).

Court vacated the order granting that petition, and it ordered that the Elliot's petition was denied. (Minn. S.C. Apr. 14, 2015, Order, [Docket No. 6-3], Ex. 8).[4] Elliot, proceeding pro se, then filed the present Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1]; that Petition is now before this Court.

### B. Procedurally History in Federal Court

On December 11, 2015, subsequent to the filing of the present petition, the United States Supreme Court granted the petition for writ of certiorari to <u>Birchfield v. North Dakota</u>, No. 14-1468; <u>Bernard v. Minnesota</u>, No. 14-1470; and <u>Beylund v. North Dakota</u>, No. 15-119, together. The <u>Bernard</u> and <u>Birchfield</u> petitions for writ of certiorari contain the same challenge which Elliot now raises, namely "[w]hether, in the absence of a warrant, a State may make it a crime for a person to refuse to take a chemical test to detect the presence of alcohol in the person's blood." Petition for Writ of Certiorari, <u>Birchfield v. North Dakota</u>, 136 S.Ct. 614, 614 (2015).

On December 23, 2015, the undersigned, *sua sponte*, stayed the present case reasoning that the Supreme Court of the United States had granted certiorari on the very issue of law at issue in Elliot's petition. (Order [Docket No. 11]). The undersigned noted in that Order, [Docket No. 11], that certiorari was granted in the exact state case which the Minnesota Court of Appeals used to uphold Petitioner's conviction: <u>Bernard v. Minnesota</u>, No. 14-1470. The undersigned further noted that given the extreme and irrevocable prejudice that could have resulted in premature action, the most appropriate course of action was the conservative one of staying the present habeas petition proceedings until the Supreme Court of the United States issued its opinion in <u>Bernard v. Minnesota</u>, No. 14-1470. (Order [Docket No. 11]).

---

[4] The Minnesota Supreme Court's stay of Elliot's petition for review pending <u>Bernard</u>, and it subsequent denial of his petition for review in light of the Minnesota Supreme Court affirmation of <u>Bernard</u>, demonstrates that the Minnesota Supreme Court, like the Minnesota Court of Appeals, found Elliot's conviction legally and factually analogous to the conviction in <u>Bernard</u>.

Since that time, the Supreme Court of the United States has issued its decision in <u>Bernard v. Minnesota</u>, No. 14-1470, 2016 WL 3434398 (U.S. June 23, 2016). Accordingly, on June 23, 2016, the undersigned issued an Order lifting the stay of proceedings in the present case. (Order [Docket No. 12]). The Petition, [Docket No. 1], is now ready for decision.

### C.  The Petition for Writ of Habeas Corpus[5]

Petitioner challenges the Minnesota test-refusal statute's constitutionality in light of the United States Supreme Court decision in <u>Missouri v. McNeely</u>, — U.S. —, 133 S.Ct. 1552, 185 L.Ed. 2d 696 (2013). (<u>See</u> Petition [Docket No. 1]). Petitioner asserts that his conviction for first degree test refusal, pursuant to Minnesota Statute § 169A.20, Subdivision 2, must be reversed in light of the statute's unconstitutionality. (<u>See</u> Petition [Docket No. 1]).

First, Petitioner argues that <u>McNeely</u> "overruled" the Minnesota state cases which held that the natural disposition of alcohol justified the Minnesota criminal refusal statue. (<u>See</u> Petition [Docket No. 1]). Those cases held that a warrantless blood draw was constitutionally reasonable because the natural dissipation of alcohol in the blood created a single-factor exigent circumstance. <u>See</u> <u>State v. Netland</u>, 762 N.W.2d 202, 213–14 (Minn. 2009), <u>abrogated in part by McNeely</u>, 133 S.Ct. 1552; <u>State v. Shriner</u>, 751 N.W.2d 538, 549–50 (Minn. 2008), <u>abrogated by McNeely</u>, 133 S.Ct. 1552. Petitioner correctly asserts that, in <u>McNeely</u> the United States Supreme Court held that the natural dissipation of alcohol in the bloodstream does not present "a per se exigent that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving case." <u>McNeely</u>, 133 S.Ct. at 1556. Therefore,

---

[5] The Petitioner did not file a memorandum in support of his petition; however, he did indicate in his Reply to Respondent's Answer to Petition for Writ of Habeas Corpus, [Docket No. 9], that he was "relying instead on the argument made by his appellate counsel at the Minnesota Court of Appeals." (Petitioner's Reply to Respondent's Answer to Pet. for Writ of Habeas Corpus [Docket No. 9]). As such, the Court incorporates Petitioner's arguments at the Minnesota Court of Appeals into his present Petition for Writ of Habeas Corpus.

Petitioner argues, the Minnesota statute itself is necessarily unconstitutional because the underlying cases supporting the statute were found unconstitutional.

Second, Petitioner contends that Minnesota's test refusal statute violates the doctrine of unconstitutional conditions. Specifically, Petitioner asserts that the Minnesota test refusal statute compelled him to relinquish his constitutional right to refuse a chemical test absent a search warrant; a right which, Petitioner argues, was acknowledged by McNeely.

The Court also notes that Petitioner mentioned in his Petition that no emergency circumstance existed regarding his test refusal and that the Minnesota state court decisions violated the Supremacy Clause. (Petition, [Docket No. 1], at 5, 7). It does not appear Petitioner is attempting to raise new arguments with these assertions, but instead Petitioner is merely attempting to further support his original argument that Minnesota's criminal test refusal statue is unconstitutional in light of McNeely. (See Id.).

On June 24, 2016, Petitioner filed a Notice of Change of Address, [Docket No. 24], indicating that his address had changed. Although it does not state definitively that Petitioner's period of incarceration has terminated, the Court notes that the Notice of Change of Address for Petitioner appears to refer to a private residence which would suggest that Petitioner has been released since he first filed this habeas action.

## II.   ANALYSIS

### A.  Case-in-Controversy Requirement

Before the Court considers the underlying merits of Elliot's petition, in light of Petitioner's apparent release from prison, the Court must first ensure that his petition has not become moot since Elliot filed his Writ of Habeas Corpus, [Docket No. 1], with this Court.

### i.   Standard of Review

Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." Id. (citations and internal quotations omitted).

The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action. See In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996), cert. denied, 519 U.S. 980, 117 S.Ct. 432, 136 L.Ed.2d 331 (1996). If it becomes impossible for the Court to provide any further redress for the claims that have been raised, the case must be dismissed as moot. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). In addition, as a general rule, when a petitioner for habeas relief protests the conditions of his confinement, his claim becomes mooted when those conditions no longer exist. See Hernandez v. Garrison, 916 F.2d 291, 293 (5th Cir. 1990); Thompson v. Smith, 719 F.2d 938, 940–41 (8th Cir.1983) (habeas claims mooted due to the Petitioner's transfer to another institution); Corgain v. Miller, 708 F.2d 1241, 1246 (7th Cir. 1983); Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974).

The claims of a habeas corpus petitioner cannot be moot as long as that petitioner remains incarcerated because, in such cases, a Writ of Habeas Corpus can always provide meaningful relief—namely, release from prison. See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). Once a habeas petitioner is released from custody, however, his

case becomes moot, unless he can show that a Writ of Habeas Corpus would still provide him some genuine benefit. Id.

But if a habeas petitioner is challenging the very validity of his underlying conviction—and not just the length of his sentence—then his release from prison will not cause his petition to be moot, because there are "collateral consequences" of the conviction that will continue to affect the petitioner even after his release from custody. In Carafas v. LaVallee, the Supreme Court held that the collateral consequences of a conviction can keep a habeas case from becoming moot after the petitioner is released. 391 U.S. 234, 237, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The Court explained:

> It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these disabilities or burdens which may flow from petitioner's conviction, he has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him. On account of these collateral consequences, the case is not moot.

Id. at 237–38 (footnotes and citations omitted); see Maleng v. Cook, 490 U.S. 488, 491–92 (1989).[6]

### ii. Discussion

As noted above, Petitioner very recently filed a Notice of Change of Address, [Docket No. 24], indicating that his address had changed. It appears to the Court that the Petitioner new address is not a correctional facility, but rather a private residence. Therefore, it appears to the Court that Petitioner is no longer incarcerated. (See Id.). The Court, however, cannot determine

---

[6] It is also well-settled that a habeas petitioner need not be literally locked behind bars in order to satisfy the jurisdictional "in custody" requirement. A person who has been released from prison, but remains subject to the restrictions of parole, is considered to be "in custody" for habeas purposes. Jones v. Cunningham, 371 U.S. 236 (1963).

from that notice whether Petitioner has been unconditionally released or has been released on some form of supervised release.  The Court's analysis of the case-or-controversy requirement in the present case, however, is the same whether Petitioner was unconditionally released or released on some form of supervised release.

As noted above and fully discussed below, Petitioner challenges the very constitutionality of his underlying conviction. (See Petition [Docket No. 1]). When a habeas petitioner is challenging the validity of his conviction his release from prison, even his unconditional release, will not cause his petition to be moot, because there are "collateral consequences" of the conviction that will continue to affect the petitioner even after his release from custody. Carafas, 391 U.S. at 237.

Therefore, whether Petitioner has been unconditionally released or released on some form of supervised release, his present petition still satisfies the case-or-controversy requirement. As such, the Court will review the merits of Elliot's petition.

**B.  Petitioner Fails to State an Actionable Claim for Relief**

**i.  Standard of Review**

As a threshold matter, the AEDPA establishes a one-year statute of limitations for all Section 2254 habeas actions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a <u>properly filed</u> application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2) (emphasis added).

If a petition is timely, then on the merits, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." <u>Mark v. Ault</u>, 498 F.3d 775, 782–83 (8th Cir. 2007). Under the AEDPA, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of

law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). "[C]learly established Federal law" refers to the holdings, as opposed to the dicta, of [U.S.] Supreme Court opinions that had been released prior to the date on which the state court issued its decision." Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102–03 (D. Minn. 2008) aff'd, 575 F.3d 785 (8th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70 (2006)).

An "unreasonable application" of federal law occurs when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 408–09. A federal court "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. See Yarborough v. Alvarado, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."). The AEDPA imposes a highly deferential standard for evaluating state court rulings which demands the state court decisions be given the benefit of the doubt. Renico v. Lett, 559 U.S. 766 (2010).  Habeas relief cannot be granted unless the petitioner has identified and substantiated a specific error committed by the state courts.

12

Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the United States Supreme Court. Finally, petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### ii. Discussion

As a preliminary matter, the Court finds that the Petition was filed within the one-year statute of limitations established by the AEDPA, and it further finds that Petitioner has properly exhausted all his available state court remedies. The Minnesota Supreme Court denied Elliot's petition for review on April 14, 2015. Elliot filed the present petition for Writ of Habeas Corpus on June 25, 2015. (Petition [Docket No. 1]). Therefore, Petitioner timely filed his habeas petition within the one-year limitations period established by the AEDPA.

Also, a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state inmate unless the state inmate/petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). To satisfy the exhaustion of state court remedies requirement, a petitioner must fairly present his claims to the highest available state court before seeking relief in federal court. O'Sullivan, 526 U.S. at 845. This includes presenting one's claims to the Minnesota Supreme Court, even if the petitioner does not have a *right* to review there. Id.; Hamilton v. Roehrich, 628 F. Supp. 2d 1033, 1045 (D. Minn. 2009) ("When a State has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust both appellate levels before presenting his claims in Federal Court.") (citing O'Sullivan, 526 U.S. at 845).

In the present case, Petitioner presented the exact same claim on appeal to the Minnesota Court of Appeals as he now presents to this Court in his habeas petition. The Minnesota Court of Appeals fully considered his constitutionality claim and affirmed his conviction. Elliott, 2014 WL 2013334. Elliot subsequently petitioned the Minnesota Supreme Court for discretionary review on the same grounds, and the Minnesota Supreme Court ultimately denied that petition on April 14, 2015; thereby, affirming Elliot's conviction. As such, the Court finds that Petitioner has exhausted all available state court remedies as required by 28 U.S.C. § 2254(b).[7]

As to the merits, Petitioner asks this Court to reverse his underlying state court conviction as unconstitutional in light of McNeely, 133 S.Ct. 1552. (Petition [Docket No. 1]). The State of Minnesota responds that "the Minnesota Supreme Court upheld the constitutionality of the State's test-refusal statute" in the face of a McNeely challenge in State v. Bernard, 859 N.W.2d 762 (Minn. 2015), as a search incident to lawful arrest. Therefore, the State argues, the same reasoning applies here.

Elliot contends that the Supreme Court's decision in McNeely renders Minnesota's implied-consent law—Minn. Stat. § 169A.51—unconstitutional, as applied to Petitioner. However, the U.S. Supreme Court in Birchfield held that its earlier decision in McNeely did not render the breath test portion of Minnesota's implied-consent law unconstitutional. See Birchfield, 2016 WL 3134398. Therefore, the Minnesota state court decisions in Petitioner's case cannot be said to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor a "decision that was based on an unreasonable determination of the facts in

---

[7] The State concedes as much in its brief asserting that "[t]he issue Elliott raises in his habeas petition was raised in the state court . . . and he has exhausted state remedies." (Respondent's Answer to Pet. For Writ of Habeas Corpus, [Docket No. 6], at 2).

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams, 529 U.S. 408–13.

After a thorough analysis of the history of Fourth Amendment caselaw and the privacy interest surrounding the administration of a breath test, the U.S. Supreme Court found that while administering a breath test is a search governed by the Fourth Amendment, "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." Birchfield, 2016 WL 3134398, at *25. The U.S. Supreme Court concluded—as the Minnesota state appellate courts had earlier also concluded—that a breath test "may be administered as a search incident to a lawful arrest for drunk driving." Id. at 26. In doing so, the U.S. Supreme Court affirmed the exact case upon which the Minnesota state courts upheld Petitioner's underlying state court conviction, and thereby, affirmed the reasoning the Minnesota state courts used to affirm Petitioner's conviction. See Id. The U.S. Supreme Court, further, held that this exception applied categorically rather than on a case-by-case basis. Id.

Petitioner was charged with felony test refusal after he refused to take a breath test. See Elliott, 2014 WL 2013334, at *1 (providing that Elliot refused to take the preliminary breath test at the roadside and reiterated his refusal at the police station after he was arrested and upholding Elliot's conviction on the basis of a case involving a breath test, calling that case "directly applicable"). The Minnesota state courts reached the conclusion that the officer arresting Petitioner had probable cause to arrest him, and therefore, the officer could also perform the breath test on Petitioner as a search incident to lawful arrest. See Elliott, 2014 WL 2013334, at *4 (citing State v. Bernard, 844 N.W.2d 41, 45 (Minn. Ct. App. 2014) review granted (May 20, 2014), aff'd, 859 N.W. 2d 762 (Minn. 2015), cert. granted, 136 S.Ct. 615 (2015), and aff'd sub nom. Birchfield v. N. Dakota, No. 14-1468, 2016 WL 3434398 (U.S. June 23, 2016)).

As already noted above, the U.S. Supreme Court used this same reasoning to affirm the exact case on which the Minnesota state courts relied in affirming Petitioner's state court conviction. As such, the Minnesota state court's decision cannot be said to have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>see</u> <u>Williams</u>, 529 U.S. 408–13.

Therefore, the undersigned recommends that Petitioner's Habeas Corpus Petition under 28 U.S.C. § 2254, [Docket No. 1], be **DENIED**.

### C.  Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C.§ 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a [federal] constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. Daniel</u>, 529 U.S. 473, 484 (2000).

In the present case, the Court finds that it is highly unlikely, given the U.S. Supreme Court's recent decision in <u>Birchfield</u>, 2016 WL 3434398, that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claim here any differently than the Court has decided it now. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about the present petition that warrants further appellate review. The Court, therefore, recommends that Petitioner not be granted a COA

in the present petition. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

## III.   CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED**:

1.  That Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], be **DENIED with prejudice**; and

2.  That Petitioner not be granted a Certificate of Appealability in the present petition.

Dated: July 1, 2016                                 **/s Leo I. Brisbois**
                                                    The Honorable Leo I. Brisbois
                                                    U.S. MAGISTRATE JUDGE

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.